

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00068-CR

**KEVIN WAYNE DEGGS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 17-02641-CRF-272**

## OPINION

Kevin Deggs appeals from a conviction for continuous sexual abuse of a child for which he was sentenced to 45 years in prison. Deggs complains that Article 38.37, Section 2(b) of the Code of Criminal Procedure relating to the testimony regarding an extraneous offense is unconstitutional as applied to him, that the trial court erred by allowing the testimony regarding the extraneous offense pursuant to Rule of Evidence 403, and that the trial court erred by finding that a police officer was the proper outcry witness

pursuant to Article 38.072 of the Code of Criminal Procedure. Because we find no reversible error, we affirm the judgment of the trial court.

## FACTS RELATING TO THE CHARGED OFFENSE

The continuous sexual abuse offense was based on two incidents with separate victims that occurred in different counties approximately six months apart. The first incident occurred in September of 2016 against J.S. in Tyler County, Texas when she was 12 years old, and the second incident occurred in April of 2017 against C.L. in Brazos County, Texas when she was 11 years old.

Deggs's son was a friend of J.S. J.S. spent the night at Deggs's home after jet skiing with them, and J.S., Deggs's son, and some other children fell asleep in sleeping bags in their living room watching a movie. After Deggs's wife went to bed, Deggs rolled off the couch next to where J.S. was laying and sexually assaulted her orally and vaginally. J.S. woke Deggs's son up, told him what happened, and they went into another room with all of the other children for safety to sleep after the incident. J.S. told her grandmother the next morning what had happened and law enforcement was notified. J.S. underwent a SANE (Sexual Assault Nurse Examiner) exam, which showed redness, abrasions, and a small tear. Semen was found on her underwear which DNA testing showed was a match to Deggs. Evidence of the exam and the DNA testing was admitted into evidence as well as the victim's testimony as to what had occurred.

C.L. testified that she spent the night with her sister, Deggs, Deggs's wife, and

Deggs's two children in a hotel room. C.L.'s sister had been married to Deggs's cousin. Deggs and his wife slept in one bed, C.L. and her sister slept in another, and Deggs's children slept on the couch. During the night, C.L. testified that she woke up when she realized Deggs was "touching my vagina area, inside and outside," which Deggs was laying on the floor next to her bed on some pillows. C.L. testified that Deggs also touched her breasts under her clothes. She pushed his hand away but he kept coming back. His hand was under her pillow so she bit him on the hand. Deggs got up and asked C.L. to go outside with him so he could smoke but she said no. C.L. texted her mother, who was staying at another hotel in the vicinity, to come get her. C.L. woke her sister up and they left to go to the hotel where their mother was staying. When they got there, C.L.'s mother immediately left and went and confronted Deggs. While her mother was gone, law enforcement arrived and questioned C.L. about what had happened. C.L. gave the officer a full account of what Deggs had done to her.

Deggs was convicted of continuous sexual abuse of a child based on these two offenses. Deggs does not challenge the sufficiency of the evidence as to the charged offenses in this appeal.

**ARTICLE 38.37, SECTION 2(b)**

In his first issue, Deggs complains that Article 38.37, Section 2(b) of the Code of Criminal Procedure is unconstitutional as applied to him pursuant to the U.S. and Texas Constitutions. Deggs complains that the admission of testimony regarding an extraneous

offense that had allegedly occurred approximately 22 years before the trial resulted in the application of Article 38.37 being unconstitutional as it was applied to him.

Generally, evidence of an extraneous offense is inadmissible if offered to prove a person's character to show the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). Notwithstanding rule 404(b), evidence that a defendant on trial for certain sex offenses against a child committed a separate sex offense against another child may be admissible under Section 2(b) of Code of Criminal Procedure Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Pursuant to Article 38.37, the evidence is admissible for any relevant purpose, including as proof of the defendant's character and propensity to act in conformity with his character. *Id*.

In an as applied constitutional challenge, the claimant "concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018). Because a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts, a litigant must show that in its operation, the challenged statute was unconstitutionally applied to him. *Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). We presume the statute is valid and the legislature did not act unreasonably or arbitrarily in enacting it. *Faust v. State*, 491 S.W.3d 733, 744 (Tex. Crim. App. 2015).

The Due Process Clauses in the Fifth and Fourteenth Amendments prohibit states

from depriving any person of life, liberty, or property, without due process of law. U.S. Const. AMENDS. V, XIV. The Due Process Clause requires that the prosecution prove, beyond a reasonable doubt, every element of the crime charged. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (*citing Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

Generally, an accused must be tried only for the offense with which he is charged and may not be tried for a collateral crime or being a criminal generally. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). The essential guarantee of the Due Process Clause is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures. *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim. App. 1987), *overruled on other grounds*, *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

This Court has held that Article 38.37, Section 2(b) is facially constitutional because of the protections set forth both in Article 38.37, Sections 2-a and 3 requiring timely notice prior to trial and a hearing conducted outside the presence of the jury for the trial court to determine that the evidence would be sufficient for a reasonable juror to find that the extraneous offense was committed beyond a reasonable doubt, with the requirement to conduct a Rule 403 balancing test upon request by the defendant. *See Gates v. State*, No. 10-15-00078-CR, 2016 Tex. App. LEXIS 2599, 2016 WL 936719, at *4 (Tex. App.—Waco Mar. 10, 2016, pet. ref'd) (mem. op., not designated for publication); *see also* TEX. R. EVID.

403. Although his arguments seem to express questions regarding the facial constitutionality of Article 38.37, Section 2(b), Deggs states that his complaint is limited to an "as-applied" challenge, and we will limit our analysis as well.

Deggs complains that Article 38.37, Section 2(b) is unconstitutional as applied to him in this proceeding because the protections provided by Rule 403 of the Rules of Evidence, which have been used as a basis to find the statute constitutional, were "illusory" as applied to him in this proceeding. He argues that the evidence should have been excluded pursuant to Rule 403, and that Rule 403's alleged protections are "illusory" because only one court of appeals has ever excluded evidence admitted pursuant to Article 38.37 on the basis of Rule 403. *See Perez v. State*, 562 S.W.3d 676, 686-88 (Tex. App.—Fort Worth 2018, pet. ref'd). He further argues that because the trial court questioned the necessity of a balancing test pursuant to Rule 403 during the Article 38.37, Section 2-a hearing, the trial court's ruling was insufficient.

The extraneous act in question took place in 1998, approximately 18 years before the first of the two offenses upon which the continuous sexual abuse charge occurred. The alleged victim testified that when she was 12 years old and Deggs was 19 years old, Deggs was babysitting her and her siblings at his house. His mother was inside with the alleged victim's younger twin siblings. The alleged victim and her younger sister were playing hide and seek with Deggs when he approached the alleged victim and touched her under her shorts on her vagina. When she pulled away from him, the alleged victim

suffered a scratch which required minor medical treatment. The alleged victim grabbed her sister and they went inside the house where Deggs's mother was. The alleged victim did not tell Deggs's mother what had occurred but did tell her mother when her mother picked them up. Her mother called police sometime later after the alleged victim had a second interaction with Deggs in her bedroom when he tried to get her to change clothes in front of him. She was interviewed by the police and participated in a forensic exam, but never went to court. The video of the forensic exam had been lost, and there were no medical records available to substantiate the alleged victim's claims. Her identity was discovered by law enforcement during the investigation of one of the two offenses for which Deggs was being tried, and she gave a lengthy statement to law enforcement at that time as to what had occurred.

After the alleged victim's testimony in the Article 38.37, Section 2-a hearing, Deggs objected to the admission of the evidence because the testimony given by the witness was insufficient to find that Deggs had committed that offense beyond a reasonable doubt and that the evidence should be excluded pursuant to Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusion, misleading the jury, undue delay, or the needless presentation of cumulative evidence. *See* TEX. R. EVID. 403. The trial court allowed the State and Deggs to argue the necessary standards for the balancing necessary pursuant to Rule 403 and discussed each one prior to ruling. The trial court overruled Deggs's objections and found that the evidence would

be admissible.

Our review of the record leads us to the conclusion that Article 38.37, Section 2(b) is not unconstitutional as applied to Deggs. The trial court followed the statute's requirements and after hearing evidence and the arguments of counsel, determined that the evidence was sufficient for a reasonable juror to find that Deggs committed the extraneous offense beyond a reasonable doubt and that its probative value was not substantially outweighed by the danger of unfair prejudice or would mislead or confuse the jury. Although Deggs disagrees with those conclusions as will be discussed in the next issue, we do not find that the statute is unconstitutional as applied to him. We overrule issue one.

## ADMISSION OF EXTRANEOUS CONDUCT

In his second issue, Deggs complains that the trial court abused its discretion by allowing the admission of the extraneous conduct because the evidence was not sufficient for a reasonable juror to find that he committed the offense beyond a reasonable doubt pursuant to Article 38.37, Section 2-a(1). He also contends that the probative value of the evidence was substantially outweighed by the factors listed in Rule 403 of the Rules of Evidence and caselaw that has interpreted Rule 403.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). There is no abuse of discretion if the trial court's ruling is within the zone of reasonable

disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009).

**ARTICLE 38.37**

Deggs argues that the evidence from the hearing conducted by the trial court did not support a finding that Deggs committed the offense of Indecency with a Child by Contact because the testimony of the alleged victim was not sufficient. In making the Article 38.37, Section 2-a threshold admissibility determination, the trial court was called upon to determine whether, if the jury were to believe the witness's testimony, that testimony would be sufficient to prove the commission of an extraneous offense beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1). An alleged victim's testimony standing alone without corroboration can be, and was in this instance, sufficient to prove an offense. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) TEX. PENAL CODE ANN. § 21.11(a).

In his argument in his brief on this issue, Deggs acknowledges that the testimony of the alleged victim, if believed, is sufficient to find the extraneous offense occurred beyond a reasonable doubt. Deggs argues that the evidence was deficient because it was an offense that allegedly occurred more than twenty years prior to trial and there was no physical evidence or other testimony or documentary evidence to corroborate the alleged victim's claims. However, these facts, or lack thereof, go to the weight to be given to the alleged victim's testimony or her credibility. In the Article 38.37, Section 2-a hearing, the trial court is the fact finder and as such, is the sole arbiter of the credibility of the witness

and the weight given to his or her testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1979). The trial court can resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the trial court found the alleged victim's testimony to be credible and gave weight to her testimony. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). Accordingly, we find the trial court did not abuse its discretion following the Article 38.37, Section 2-a hearing by finding that the alleged victim's testimony would be adequate to support a finding by the jury that Deggs committed the extraneous offense beyond a reasonable doubt under Article 38.37, Section 2-a(1). We overrule this part of issue two relating to Deggs's complaint regarding Article 38.37.

**RULE OF EVIDENCE 403**

Deggs further complains that the evidence should have been excluded pursuant to Rule of Evidence 403. The admission of evidence pursuant to Article 38.37, Section 2(b) is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice. *Price v. State*, 594 S.W.3d 674, 680 (Tex. App.—Texarkana 2019, no pet.). Even so, Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009). Because evidence of

separate sexual offenses is "probative on the issues of intent and a defendant's character or propensity to commit sexual assaults on children" if sufficient evidence is provided regarding the extraneous offense, the probative value of sexual offenses committed against other children is generally not substantially outweighed by the "danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence," *Price*, 594 S.W.3d at 680; TEX. R. EVID. 403.

Deggs argues in part that the evidence regarding the extraneous offense was too remote to be considered probative. "Remoteness can lessen significantly the probative value of extraneous-offense evidence." *Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd). "Still, remoteness alone does not require the trial court to exclude evidence of an extraneous offense under Rule 403." *citing Gaytan*, 331 S.W.3d at 226. "Rather, remoteness is but one aspect of an offense's probativeness the trial court is to consider along with the other factors in the Rule 403 analysis." *West v. State*, 554 S.W.3d 234, 239-40 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

When a trial court conducts a Rule 403 balancing test,

> it must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together." *Id*. at 642.

With respect to the first factor in the balancing test, evidence of a separate sexual offense against a child admitted under Article 38.37, Section 2(b) is probative of a defendant's character or propensity to commit sexual assaults on children. *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd). One of the underlying counts of the continuous sexual assault charge for which Deggs was on trial was for indecency with C.L., who was 11 at the time of the offense. The alleged victim of the extraneous offense was 12 at the time of the alleged extraneous offense. This was the only allegation by the State as to extraneous conduct with other children.

We do not believe that the "remoteness of the extraneous offenses rendered the probative value of this evidence so weak as to render this evidence inadmissible under Rule 403." *Harty v. State*, 552 S.W.3d 928, 935 (Tex. App.—Texarkana 2018, no pet.). Instead, we find that the evidence relating to the extraneous offense offered by the State was probative of Deggs's character or propensity to commit indecent acts with children around C.L.'s age. As a result, we conclude that this factor weighed strongly in favor of admission.

As to the second factor, we find that the State demonstrated its great need for the evidence. By adopting Article 38.37, Section 2, the Legislature recognized that in child sex offenses, "there is typically very little evidence to assist prosecutors with proving their

cases." *Bradshaw*, 466 S.W.3d at 884 (*quoting* Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). Deggs tries to minimize this by emphasizing the strength of the State's case as to Deggs's offense against J.C., which included DNA evidence. He also argues that they did not strongly attack C.L.'s credibility. However, Deggs attempted to establish that the offense against C.L. did not happen in part because there were others in the room when it allegedly occurred, none of whom heard anything even though C.L. claimed to have struggled, bit, and kicked out at Deggs. Deggs attempted to show inconsistencies in C.L.'s testimony, and argued that the offense did not occur as to C.L. If the offense against C.L. was found to have not occurred, Deggs argued to the jury that he would be entitled to an acquittal because the offense against J.S. occurred in another county. There was no physical evidence in support of the offense against C.L. We are mindful that "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases [involving sexual assault].'" *Id*. at 883-84 (*quoting Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)). Accordingly, we find that the second factor also weighed in favor of admission.

With respect to the third factor, we recognize that the inherently inflammatory and prejudicial nature of evidence of extraneous sexual offenses against children does tend to suggest a verdict on an improper basis. *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). Thus, the third factor weighed against admission.

As to the fourth factor, the ultimate issue in this case was whether Deggs had committed the two separate sexual offenses against J.S. and C.L. as alleged in the State's indictment. The trial court mitigated the tendency of the extraneous-offense evidence to confuse or distract the jury from the main issue at trial by instructing them orally after the alleged victim's testimony and in the jury charge that such extraneous-offense evidence could only be considered if the jury determined, beyond a reasonable doubt, that the extraneous offenses were committed and for the purposes of determining whether the state proved all the elements for the charged offense alleged in the indictment. Thus, the trial court twice redirected the jury to the main issues in the case. We find the fourth factor weighed in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical and pertained to matters including victim credibility that could easily be understood by a jury. We find the fifth factor weighed in favor of admission.

As to the last factor, the alleged victim's testimony comprised approximately ten pages of the over-250 pages of the reporter's record. We find that the presentation of the extraneous-offense evidence did not consume an inordinate amount of time. Deggs argues that although the presentation of the evidence as to the extraneous offense did not take up a significant amount of time, the fact that the State presented the alleged victim's

testimony last had a greater impact than length alone. However, in our review of this record, we conclude that the last factor favored admission.

We find that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of the evidence of the extraneous offense was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. Consequently, we find that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule issue two.

## OUTCRY WITNESS

In his third issue, Deggs complains that the trial court erred by determining that the proper outcry witness as to the offense against C.L. was a law enforcement officer rather than C.L.'s mother. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Deggs contends that the text message that C.L. sent her mother was sufficient to constitute an outcry and that her mother should have been the outcry witness because the text message was sufficient to constitute the outcry. The text message C.L. sent to her mother was: "Can you come get me. Dillon's cuz [Deggs] put his hand in my pants. He just went outside." The trial court conducted a hearing outside the presence of the jury to determine the proper outcry witness. C.L.'s mother, sister, and the officer each testified in the hearing.

Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, governs the admissibility of certain hearsay evidence in trials for specified crimes against a child younger than fourteen years old. *See* TEX. CODE CRIM. PROC. art. 38.072. The statute creates

a hearsay exception and allows testimony of the first adult in whom a child confides regarding sexual or physical abuse. *See id.* at 38.072 § 2(a)(3); *Martinez v. State*, 178 S.W.3d 806, 810-11 (Tex. Crim. App. 2005). The child's statement to the adult is commonly known as the "outcry," and the adult who testifies about the outcry is commonly known as the "outcry witness." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has explained that under Article 38.072, the proper outcry witness is the first adult person to whom the child describes the alleged offense in some discernible manner beyond general insinuations that sexual abuse occurred. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) ("[T]he statement must be more than words [that] give a general allusion that something in the area of child abuse was going on."); *see also Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) ("Simply put, the outcry witness is the first adult to whom the child tells 'how, when, and where' of the assault."). However, the proper outcry witness is not determined merely by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense. *See Thomas v. State*, 1 S.W.3d 138, 141 (Tex. App.—Texarkana 1999, pet. ref'd). Rather, the victim must describe the offense to the witness. *Garcia*, 792 S.W.2d at 91.

The trial court has "broad discretion" in determining the admissibility of outcry evidence. *Garcia*, 792 S.W.2d at 92. We review a trial court's ruling on the designation of

an outcry witness for an abuse of discretion. *Garcia*, 792 S.W.2d at 92. A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will not reverse a trial court's ruling if it was within the zone of reasonable disagreement, and we must uphold the ruling "if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

In the hearing, C.L.'s mother testified that the text message was the extent of what C.L. told her prior to her going to confront Deggs. C.L.'s sister testified that she was asleep when the offense occurred and was awakened only when C.L. woke her up to talk to their mother on the phone. C.L.'s sister testified that they did not discuss it at the hotel where the offense occurred or on the way to their mother's hotel. C.L. did not tell her any details about what had happened until weeks later. The officer testified that C.L. initially stated only in general terms what had happened. This initial statement was made in a hotel room with C.L.'s sister, a friend of C.L.'s mother, and a man only described by his name but not relationship to the parties also present. C.L. then gave the officer specific details when they stepped outside the hotel room, which he recorded on his body camera. C.L. told the officer that Deggs had put his hands under her bikini top on her breasts and went underneath her bikini bottoms to touch her on the outside of her vagina.

Although Deggs argued that C.L.'s mother or her sister were the proper outcry

witness, after hearing the testimony and the arguments of counsel, the trial court determined that the officer was the proper outcry witness. Deggs argues that this determination was erroneous.

We do not find that the text message contained anything beyond a general insinuation that a sexual offense had occurred. *See Lopez*, 343 S.W.3d at 140. The trial court was within its discretion to determine that it was not until C.L. told the officer that Deggs had touched her breasts under her bikini top and on the outside of her vagina under her bikini bottoms that there was a discernable description of a sexual offense that had occurred. Because of this, the trial court did not abuse its discretion by finding that the officer was the proper individual to testify as the outcry witness. We overrule issue three.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


                                                    TOM GRAY
                                                    Chief Justice


Before Chief Justice Gray,
        Justice Johnson, and
        Justice Wright[1]
Affirmed
Publish
Opinion delivered and filed May 18, 2022
[CRPM]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.